## MAGIN v. KARLE.

## MAGIN v. LEHMAN.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

Nos. 84, 85. Argued November 15, 16, 1893. — Decided November 27, 1893.

Letters patent 248,646, granted to Charles Gordon, October 25, 1881, for "an improved apparatus for cooling and drawing beer" are void for want of patentable novelty, and the invention patented was anticipated.

THE case is stated in the opinion.

*Mr. John R. Bennett,* (with whom was *Mr. George B. Selden* on the brief,) for appellant.

*Mr. Josiah Sullivan* for appellee.

MR. JUSTICE JACKSON delivered the opinion of the court.

These two causes present the same questions on the same state of facts. They were heard in the lower court and in this court as practically one case, and will therefore be considered

and determined together. The suits were brought by the appellant as assignee of letters patent No. 248,646, granted to Charles Gordon, October 25, 1881, for "an improved apparatus for cooling and drawing beer," against the respective appellees for the alleged infringement of the patent. The defences interposed by the answer of each respondent were, want of patentable novelty in the invention covered by the letters patent, the anticipation thereof by certain prior devices, and non-infringement. The latter defence was not insisted on, either in the court below or in this court, the main defence relied on being that of anticipation by a prior apparatus used for the same purpose before the date of the Gordon invention. Upon this question much proof was taken on both sides.

The causes were heard before Mr. Justice Blatchford, sitting in the Circuit Court of the United States for the Northern District of New York, who found from the proof that the existence of the prior anticipating device was clearly established, and shown to have been in practical use before the Gordon invention. The court said:

"This is the same patent which was involved in the suits of *Magin* v. *McKay* and *Magin* v. *Welker*, decided by me in this court August 20, 1885, 24 Fed. Rep. 743. In the opinion in those cases, the material parts of the specification and the four claims are set forth, and the operation of the apparatus is described. It was there held that, so far as claims 1 and 4 were concerned, the invention was anticipated by an apparatus put in use by one Meinhard, in Rochester, New York, in the summer of 1877, and which was continued in use about four years. A description was given of that apparatus, and it was held, on the evidence, that it was practical and successful, and embodied the same principle as that of Gordon; that it was continued in use for nearly two years after Gordon obtained his patent; and that, although it did not contain the non-conducting jacket surrounding the outer wall of the cold-air passage, which was a feature in claim 3 of the patent, there was no patentable invention in adding a non-conducting jacket to the elements found in claim 1, or to those found in claim 4.

Infringement of claim 2 was not alleged in those cases. The bills were dismissed on the ground of the prior existence of the Meinhard apparatus.

" In the present suits infringement is alleged in each of them of claims 1 and 4 of the Gordon patent. The testimony on both sides taken in the McKay and Welker suits in regard to the Meinhard apparatus is introduced in evidence in the present cases, and voluminous proofs in addition have been taken by both parties in regard to that apparatus.

" A careful examination of all the evidence, with the aid of exhaustive briefs for the respective parties, confirms me in the conclusion at which I arrived in the McKay and Welker cases, that the invention embodied in claims 1 and 4 of the Gordon patent existed in the Meinhard apparatus prior to the time when the invention was made by Gordon, and that that apparatus was practical and successful." 40 Fed. Rep. 155.

Having reached this conclusion the court dismissed the bill, and from that decree the present appeals are prosecuted.

The character of the invention, so far as relates to the first and fourth claims, which are the only claims alleged to be infringed by the appellees, is thus set forth in the specification:

" My invention relates to an improved apparatus having for its object the keeping of beer, ale, or other liquid at a low temperature during the operation of drawing the same for consumption; and it consists in surrounding the supply plate through which the beer is delivered to the faucet with a cold-air passage, for the purpose of maintaining a low temperature in the liquid in the supply pipe."

The first and fourth claims are as follows:

" 1. The combination of the ice-box D, supply pipe B, faucet C, and the cold-air passage H, surrounding the supply pipe, substantially as and for the purposes set forth."

" 4. The combination of the ice-box D, supply pipe B, faucet C, lower chamber F, and the cold-air passage H, communicating between the ice-box and the chamber, substantially as described."

These two claims are substantially the same, the only difference between them being that the fourth claim includes the

lower chamber F, which is not specifically mentioned as an element of the combination in the first claim.

The apparatus consists of an upper or saloon ice-box, provided with a suitable faucet and a chamber located in the cellar, which is connected with the upper or saloon ice-box by an air passage, through which passes the beer supply pipe conveying the beer from the keg in the cellar chamber to the faucet in the upper or saloon ice-box. The air cooled by the ice in the upper or saloon ice-box, and the water produced by the melting of the ice, flow down through the air passage, coming in contact with the beer-supply pipe, thereby reducing the temperature of the beer contained therein, and passing through it. The beer is forced from the keg upward through the beer supply pipe to the faucet by air pressure introduced in the keg by any suitable air apparatus.

Gordon made this invention in June, 1879. The anticipating apparatus was used by one Meinhard, in Rochester, New York, in 1877, or early in 1878. That apparatus had the upper ice-box, faucets, the lower chamber, and the supply pipe extending from the upper to the lower chamber, and the supply pipe was surrounded or encased in another pipe which formed an air passage communication between the upper ice-box and the lower chamber. Each supply pipe led to a barrel or keg in the lower chamber, and the upper portion of the supply pipe was surrounded or encased in a tin pipe, while the lower part was enclosed in a rubber hose. The water of the melted ice, and the cold air from the upper ice-box, flowed down around the supply pipe through this tin and rubber encasement. It was claimed that this apparatus was a practical and successful one, and embodied the same principle as that of the Gordon device, though it may have been inferior in degree of utility and perfection, and that the Gordon apparatus was simply an improvement, which did not involve any patentable invention.

It is purely a question of fact, to be determined from the testimony in the cases, whether the anticipating Meinhard apparatus actually existed, as alleged by the appellees. They have established by a number of respectable witnesses that

such an apparatus was in practical use by Meinhard a year or more prior to the date of the Gordon invention. This testimony is sought to be impeached or contradicted by the appellant, but after a careful examination thereof, we think he fails to break down or discredit the proof by which the anticipating device is established.

The voluminous testimony on this question of fact has been carefully examined, and, without reviewing it in detail, we concur with the court below in thinking that it does establish, clearly and satisfactorily, the existence of the prior Meinhard apparatus, which constituted an anticipation of the Gordon invention.

Again, in a stipulation entered into between the parties, it was agreed as follows:

"It is hereby stipulated by and between the parties hereto that prior to the date of the invention by Mr. Charles Gordon of the improvement described, claimed in letters patent No. ———, or any of the said improvements, there had been in public use in the city of St. Louis, Missouri, and possibly elsewhere, a device or apparatus for drawing and cooling beer, in which were upper and lower ice-boxes, beer-supply pipes, beer kegs, air pipes, air pumps, and faucets, said beer-supply pipes being led from the lower to the upper ice-box in metallic pipes at least four inches in diameter which was filled with sand or gravel; said metallic pipe running from the upper to the lower ice-box; said metallic pipe being closed at its lower end, where it joined the lower ice-box; and below the sand or gravel by a wooden plug or disk, through which the beer-supply pipes pass, this plug or disk forming a bottom for the pipe for the purpose of holding the gravel in the pipe. The said apparatus was in all respects similar to the Gordon device, except the difference hereinbefore stated, it being an apparatus similar to the device shown on page 7 of the 'Cleveland circular,' which is offered in evidence by the defendants, and the same is received and marked 'Defendants' Exhibit Cleveland Circular.'"

This St. Louis apparatus had a beer-supply pipe, connecting the upper ice-box and the barrel or keg in the lower chamber,

enclosed in a metallic case, four inches in diameter, which was filled with sand or gravel, through which the drippings from the upper ice-box percolated. The metallic case, thus filled, was designed for cooling the beer that remained in the supply pipe by means of the drippings from the upper ice-box, which flowed down through the same, and to some extent it accomplished the desired purpose. The principal was well known at that time, and at the date of the Gordon invention, that cold air from an upper ice-box or chamber would descend through an enclosed connection to a lower chamber. The Gordon invention, by means of an open air chamber surrounding the supply pipe, sought to put this principle to a practical purpose. He dispensed with the sand or gravel, such as filled the metallic case around the supply pipe in the St. Louis apparatus, and left that space open, so that the cold air, as well as the drippings from the upper ice-box, might be conducted through the same. In other words, he simply emptied the metallic case of the St. Louis apparatus of its sand or gravel so as to leave that metallic case open, and allow the cold air from the upper box to flow down through the same. This change in the apparatus does not rise to the dignity of invention such as would entitle him to a patent. The purpose to be accomplished was not patentable, and the particular means devised to secure that purpose did not involve invention. *Carver* v. *Hyde*, 16 Pet. 513, 519; *LeRoy* v. *Tatham*, 14 How. 156; *Corning* v. *Burden*, 15 How. 252; *Barr* v. *Duryee*, 1 Wall. 531; *Fuller* v. *Yentzer*, 94 U. S. 288; *Knapp* v. *Morss, ante*, 221.

We are, therefore, of opinion that the Gordon patent is wanting in patentable novelty, and that it was anticipated. The judgment of the court below, in each case, is accordingly

*Affirmed.*