NATIONAL FOLDING BOX & PAPER CO. v. STECHER LITHO-GRAPHIC CO. et al.

(Circuit Court of Appeals, Second Circuit.    May 26, 1897.)

1. PATENTS—INVENTION—PAPER-BOX MACHINES.

In a machine for forming paper-box blanks there is no invention in changing the counter-die by merely substituting a firm piece of paper having creases to receive the creasing rules of the die, on the face of the platen, for semi-soft sheets of paper packing, which were so yielding as to spread out and break, making rounded or uncertain creases in the blanks, and often tearing the material. 77 Fed. 828, affirmed.

2. SAME.

The Munson patent, No. 259,416, for improvements in the manufacture of paper boxes, is void for want of patentable invention over the prior Shelton patent, No. 183,423. 77 Fed. 828, affirmed.

This appeal is from a decree of the circuit court for the Northern district of New York which dismissed the appellant's bill in equity for an alleged infringement of letters patent No. 259,416, dated June 13, 1882, and issued to Edward B. Munson and Harvey S. Munson for an improvement in the manufacture of paper boxes.

Walter D. Edmonds, for complainant.

Frederick F. Church, for defendants.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The record in this case is a voluminous one, but the important points in issue are contained in a narrow compass. The flat sheets or "blanks" of paper or cardboard from which paper boxes are made are cut by dies upon the lines which form the boundary edges and lapping parts, and are indented or creased by dies upon the other lines upon which the folding or bending of the sides of the box are to be made. The difficulty which was practically experienced was the tendency of the creasing dies to be inaccurate, and not to create an even bend, or to weaken the material upon the folding lines. The improvement is described in the specification as follows:

The "lines of ultimate foldings are made by upsetting or embossing the material in such a manner as to avoid weakening the stock, while rendering it capable of bending without unduly straining or breaking in its body or upon its finished surface either in defining the lines or in folding the parts, and, further, avoids any disfigurement of the face surface of the finished article. The said apparatus consists of a single die, composed of such lengths and shapes of cutting-rule, 2, as are necessary to produce the form and direction of cuts desired, or to make the shape of blank required, with which are associated such lengths and shapes of embossing or blunt-edged rules, 3, as are required to produce the necessary lines of ultimate foldings. These cutting-rules, 2,

may be made of a height slightly in excess of that of the embossing-rules, and this is preferable. These rules, of various shapes and lengths, are all set up in a form corresponding to that of the blank to be produced, with proper separating and supporting blocks, 4, and the whole are locked in a frame or chase, 10, by wedges, as 11, in a manner similar to that in which printers' forms are made up. Such form or die is then fixed in a suitable press,—as a printing machine,—and the platen, co-operating with the bed or die carrier to make the impression, is furnished with a counter-die, Fig. 4, composed of a packing-sheet, 12, of paper or similar firm material that is fixed upon the face of the platen in such relation to the embossing-rules of the die as will provide recesses, 5, for the same to register with. This counter-die may be made up directly

upon the platen, but is preferably constructed upon a metal-plate or sheet, 13, that is capable of introduction and removal from the platen, while only such narrow pieces of the packing-sheet, 12, as are necessary to form the sides or borders of the recesses, 5, need be provided, in which case the cutting-rules will cut directly upon the platen or plate, 13. It is preferable that the whole surface of the platen shall be covered by the packing-sheet, 12, in which the recesses, 5, are formed, either by cutting out a suitable channel or indenting it by repeated contact with the die, so that, while said recesses perform their functions, the cutting-rules will also pass through the packing, 12, and have direct contact with the platen or plate, 13, in accomplishing the cutting operation."

By this combination of blunt-edged embossing-rules with a female counter-die cut or indented by repeated contact with the embossing-die, in a sheet of paper or similar firm material upon the face of the platen, the patentees claimed that the tendency of the creasing dies to cause an inaccurate or injurious result at the point where the folding lines were to be made was overcome. The specification said that:

"In this manipulation the stock along the lines of folding will be upset or embossed by being stretched and forced into the recesses by the pressure of the embossing-rules, thus defining lines upon which the blank may be readily bent to form a box without rupturing or disfiguring the outer or face surface of the material, which embossed lines are stretched and upset in the direction which the paper necessarily takes in being folded, and to exactly the extent required to fold the same at an angle, by reason of the fact that the body of the blank bears upon the face of the packing, 12, which supports the material along the border edges of the recesses, while the portions of the blank or material that are embossed are forcibly stretched or pressed into the recesses, 5, by the embossing-rules, 3, while the cutting-rules cut the lines of severance by passing through the body of the blank."

The patent contained five claims, the first two of which were devoted to a supposed improvement which consisted in cutting-rules and embossing-rules which simultaneously cut and creased the blank, but it is admitted that this type of apparatus was old at the date of the Munson invention. The other three claims are as follows:

"(3) A counter-die for forming box-blanks, consisting of a metal or other hard base, and creasing or embossing channels the edges of which are raised above the plane of the hard base, substantially as described. (4) In the manufacture of paper-box blanks, a counter-die adapted to be removed from and adjusted upon the platen of a press, constructed of a sheet of metal or similar material affording a suitably hard cutting-base, to the face of which is secured a covering or packing of paper or equivalent material to receive the embossing-rules of the co-acting die, substantially as described. (5) In the manufacture of box-blanks, the combination, with a die consisting essentially of cutting and creasing rules, of a counter-die having a hard cutting-base and embossing channels above said base, whereby the material is simultaneously cut upon some lines, and upset or creased upon other lines, which latter are stretched or conformed so as to readily bend in the folding operation, all substantially as described."

In the testimony and upon the trial in the circuit court great stress was laid by the complainant upon the alleged fact that the improvement was a marked advance upon the previous art because it stretched, and did not crush, the fibers of the blank. It is therefore necessary to look at the state of the art of paper-box making immediately prior to the date of the invention, and ascertain the precise extent of the change described in the patent. The firm of Cornell & Shel-

ton, consisting of Thomas L. Cornell and Edward De F. Shelton, were paper-box manufacturers at Birmingham, Conn., from 1875 to about 1885 or 1886, and then became incorporated under the name of the Cornell & Shelton Company, and continued in the same business until August, 1891. Mr. Cornell is now the vice president of the complainant. Charles E. Hauxhurst was in charge of Cornell & Shelton's box-making department from December, 1875 to 1884, and is now in the employment of the complainant. Each of these gentlemen was examined as a witness for the complainant, and both were interested in the protection of its property. From 1877 to 1883, Cornell & Shelton made paper boxes by means of a die consisting of cutting-rules and creasing-rules which were associated in a printers' chase, and locked therein by means of printers' blocks and furniture. The platen of the press had three, four, or five sheets of manilla paper spread over its surface, and fastened by the bails of the press. Upon this bed the box blank was placed, and the creases were made by the pressure of the creasing-die as it came down upon and indented the blanks. This packing was too soft. The pressure upon it made a rounding recess, or caused it to spread out and break, and consequently the creasing would also be poor or perhaps would be torn, and 15 per cent. of the manufactured boxes were imperfect. The operation of the packing is thus stated by Mr. Hauxhurst: "On account of the packing being soft, lying loose, you might say, on the platen,—what I meant by that is not being glued to the platen,—it would back up, give way by the pressure upon the box blanks against the platen, would not hold to form a crease sufficient to crease a blank enough to hold or form a box." That this platen was "provided with a semi-soft or compressible material, so that the rules will indent or press into such material" appears both from a rejected application of Mr. Shelton, assignor to Cornell & Shelton, for a patent dated May 20, 1875, which came into the record upon the cross-examination of Mr. Cornell, and from Mr. Shelton's patent, No. 183,423, dated October 17, 1876, which was for forming the creased lines, and printing on the same lines simultaneously. In the summer of 1883 these witnesses were shown by a former employé the Munson method of manufacture. The difference consisted in covering the platen with heavy paper, gluing it to the plate, and cutting a groove in the paper, so that a channel was made for the creasing lines, and, when adopted, produced a more successful and less uncertain result. It substituted a firm piece of packing for the semi-soft packing, cut a channel through it, and securely fastened it, but, inasmuch as the Munson patent makes its channel by cutting, or by the old method of indentation, and fixes its packing-sheet upon the face of the platen in any way whatever, the only change from the Cornell & Shelton method which is specified in the Munson patent is that the packing-sheet is of paper or similar firm material. Was the change made by substituting a firm piece of paper for semi-soft sheets of paper packing a patentable one? The trial judge was of opinion that the Shelton patent was an anticipation, or, if not, that it left nothing which the Munsons could properly designate as an invention. We have compared the Shelton apparatus as described by

witnesses who are upon the complainant's official staff, and cannot discover that any patentable improvement was described in the Munson patent over the pre-existing Shelton apparatus, and would be of the same opinion if the Munson patent had instructed the public that the sheet of paper was to be glued or riveted to the platen. The changes were of that order of mechanical detail which is far removed from inventive skill.

After the decision of the circuit court had been announced, a new solicitor for the complainant was substituted, who thought that his client was entitled to the benefit of a disclaimer, and applied to the circuit court for a rehearing after it should have been filed. This motion was denied. The proposed disclaimer, which has not been filed, is contained in the record, and disclaims "the first and second claims, and in the remaining three claims any counter-dies in which there are not channels recessed out of 'firm' material, so as to 'support the blank along their border edges' (thus assisting stretching), whose channels are not at least three in number and rectangular, or angular, to each or some of each other (thus insuring pinning down and holding flat of the blank), and whose hard base does not operate both as a stopping and cutting base for the cutting rules (thus preventing crushing on fold line)." The proposed disclaimer is not properly in the case, for, as the allowance of the motion for a rehearing on condition that the disclaimer should be filed was a matter of discretion, its rejection is not a subject of appeal. Roemer v. Bernheim, 132 U. S. 103, 10 Sup. Ct. 12. An examination of the proposed disclaimer will, we think, disclose that a strong argument could be made in favor of the proposition that with the exception of the requirement that the channel should be recessed out of "firm" paper or other material, the limitations or the requirements of the disclaimer point to an invention which would require an amended specification or a supplemental description. Hailes v. Stove Co., 123 U. S. 582, 8 Sup. Ct. 262. The decree of the circuit court is affirmed, with costs.