## UNIVERSAL WINDING CO. v. FOSTER MACH. CO.

### No. 4127.

District Court, D. Massachusetts.
Oct. 1, 1936.

George P. Dike, Cedric W. Porter, and Dike, Calver & Gray, all of Boston, Mass., for plaintiff.

J. Lewis Stackpole and Fish, Richardson & Neave, all of Boston, Mass., and E. Clarkson Seward, of New York City, for defendant.

McLELLAN, District Judge.

This is a suit for infringement of two patents, one granted to Franklin A. Reece on March 4, 1930, No. 1,749,355, for a traversing means for winding machines, and another to Swanson and Marcroft of February 13, 1934, No. 1,946,506, for a winding machine. The plaintiff is the assignee of both patents. The defense to each is invalidity and noninfringement.

Statements of fact in this opinion may be taken as findings of fact, and conclusions of law as rulings of law, in accordance with the equity rules.

Both patents in suit relate to winding machines, the object of which is to take yarn, thread, or anything of like nature which may be wound, from the bobbin or

spool on which it comes from the manufacturer and rewind it in the shape in which it is required for use by the consumer, usually a manufacturer of textiles.

*The First Patent*

A winding machine consists essentially of a spool on which the thread is wound and a guiding device to present the thread to the spool. In connection with the first patent, we are concerned only with the guiding device.

The claims in issue follow:

"4. A strand-traversing device for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of crossing and connecting helices, and means at a crossing point to control the passage of the yarn through the crossing.

"5. A strand-traversing device for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of oppositely extending crossing helices, and means at a crossing point to control the direction of the yarn at the crossing.

"6. A strand-traversing device for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of crossing and connecting helices, and means at a crossing point to maintain the strand in that portion of the groove in which it is traveling and prevent it being diverted into the other portion of the groove.

"8. A traversing-means for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of opposite crossing helices, a portion of the groove at a crossing being deeper than the opposite portion of the groove at the crossing, and means at a crossing to prevent the strand being diverted from the direction in which it is traveling.

"10. A strand-traversing device for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of oppositely extending crossing helices with a portion of the groove (sic) at a crossing cut away on its edge to prevent the strand as it travels in one direction in the groove being diverted into the oppositely extending portion of the groove."

The invention covered by these claims lies in what the patentee describes in claim 4 as "means at a crossing point to control the passage of the yarn through the crossing." In claims 8 and 10, respectively, he states his two distinctive features, "a portion of the groove at a crossing being deeper than the opposite portion of the groove at the crossing" (claim 8), and "a portion of the groove at a crossing cut away on its edge to prevent the strand as it travels in one direction in the groove being diverted into the oppositely extending portion of the groove" (claim 10).

As the prior art stood when the Reece patent was granted, the ordinary method of presenting the thread to the roll was by what is called a "reciprocating guide," which traveled back and forth along the length of the roll, laying successive turns until the package was complete, "package" being the common term, or one of the common terms, by which the thread, closely packed on its spool or core, is designated. This method of winding was effective, but not as speedy as some producers desired. Reece, at the request of the plaintiff, turned his attention to the production of a speedier device.

Besides the reciprocating guide, the prior art also suggested that the thread could be presented to the spool by a revolving wheel or roll in contact with the spool or in close proximity to it, so grooved as to lead the thread back and forth as the roll revolved. This was the method described by a patent to Hill and Brown, No. 322,451, granted July 21, 1885, in which a grooved wheel or drum guided the thread to the package as it revolved, the groove making but a single turn over the surface of the wheel, so that there was no problem of intersections. As such a drum must be of sufficient diameter to carry the thread through several turns around the package at each revolution, the size of the device made it unsuitable for winding at high speeds.

A patent to Wilcox, No. 477,196, granted June 14, 1892, for an improvement in fishing-reels, although not in the winding-machine art, came somewhat closer to the invention here considered. Wilcox devised a roll, traversed by a groove running in right and left spirals, to guide a fishing line onto a reel; and he suggested that the groove in one direction should be somewhat deeper than that in the other direction. The plaintiff's expert Armington tes-

tified that he had made a model of a roll grooved according to the description in the Wilcox patent, but could not make it work.

The real suggestion for what Reece was destined to accomplish came, not from the foregoing devices, but from a roll designed by Dickerson G. Baker. Baker had conceived the idea of dispensing with the reciprocating guide ordinarily used and substituting for it a cylindrical roll, grooved in such a way as to guide the thread back and forth along the axis of the package. His groove ran from one end of the roll to the other and back again in two spirals, one from right to left, the other from left to right, at an even depth. The two spirals necessarily crossed each other at several points on the roll, and Baker found, in the operation of the device, that the thread tended to take the wrong direction at a point of intersection. Instead of following the proper groove for the whole length of the spiral, the thread turned back in the other direction, so that it covered only a narrow area in the center of the package. Baker, who testified at the trial, said that he was unable to overcome this difficulty; and he finally designed an auxiliary guiding device which, by means of a cam, kept the thread in its proper path. For this combination of roll and auxiliary guiding mechanism, he obtained a patent, and a machine was built which was operated for about a year and a half, and then abandoned.

Reece saw, or is charged with knowledge of, the possibilities of the Baker roll, and studied the problem of the intersections. In discussing what he did, it is more convenient to speak as if there were two intersecting grooves, although in fact there is but one endless groove traversing the roll in two intersecting spirals.

Reece found that it was necessary to modify one groove at each intersection. What he did was to shallow it at either side of the intersection by sloping the bottom upward to the edge of the traverse groove and down from the opposite edge, so that at the point of crossing the groove was but a sixteenth of an inch below the surface of the roll. At the same time, he flared the groove beyond the crossing by sloping away one edge—the right-hand edge as the thread travels from right to left, the left-hand edge as it travels from left to right—giving it a broad, shallow entrance. In connection with this shallowing and widening, he removed the sharp point necessarily formed by the intersection of two grooves at an acute angle. This obstructing point was probably the chief factor in the diversion of the thread in the Baker roll. With Reece's construction, the thread follows its proper groove. When traveling in one direction, it is lifted by the slope of the groove above the level of the transverse groove, is carried across it, and is immediately captured by the flared edge beyond the crossing, which guides it into its proper path. Traveling in the other direction, the thread remains in the deep groove, unaffected by the intersection.

In his specification, Reece thus described his invention: "An important feature of the invention lies in the construction and arrangement of the grooves at the crossings to insure that the yarn will be guided from one end of the package to the other and back again without being diverted from its direction of feed or travel at the crossings. This is a matter of great importance as it is usually desirable that the direction of feed shall not be reversed except at the ends of the package. This result is accomplished by forming the grooves so that the bottom of one is at a different level from that of the other at the crossing, and chamfering the projecting point separating one groove from the other at the crossing. When thus constructed the direction of feed is positively controlled even at extremely high speeds, and without increasing the tension on the yarn even if the point of yarn delivery is quite close to the traversing roll."

Reece's modification of the Baker roll was successful. With the groove so changed, the thread stayed in it. He took the step which carried the device over the gap between failure and achievement. It was a simple step, but it was invention. Indeed, the defendant does not press the defense of invalidity. At the trial and in the defendant's brief, validity was virtually conceded. Two men, skilled in the art, witnesses in this case, testified that it was the most significant improvement in winding machinery that had occurred for 50 years. With machines using the Reece roll there is a marked increase of speed and hence of output, a substantial decrease in expense for repairs, and an elimination of the roughening or chafing of the fibers of the thread that is sometimes caused by its passage through the eye or hook of the earlier guiding devices. These advantages are not controverted by the defendant.

The defendant's roll has very much the general appearance of the Reece roll, but a certain difference is manifest. Like the Reece roll, one groove of the defendant's roll is sloped up toward the transverse groove and down from it, and, beyond the transverse groove, there is the widened entrance for the thread, somewhat altered in shape. The difference is that the course of the defendant's groove is interrupted for perhaps a quarter of an inch at either side of the other groove. The intersection is completely eliminated. In the operation of the defendant's roll the thread rises with the slope of the groove, lies for an instant on the surface of the roll, crosses the other groove, lies again for an instant on the surface of the roll, and then descends through the flared entrance into the groove beyond.

This construction may be described in very different words from those of the Reece patent. The defendant does so describe it. It urges that it has a series of grooves instead of a single groove as in the Reece patent, that there are no "crossing helices," and that it cannot be said to use the "means at a crossing" of the Reece patent, for there are no crossings. Nevertheless, the defendant's design accomplishes exactly the same result as the plaintiff's, and accomplishes it in the same way, by a shallowing and widening of the groove. The defendant took Reece's idea and carried it out with a bolder hand. Where Reece sloped the groove nearly to the surface, the defendant sloped it entirely to the surface; where Reece introduced a flare, the defendant cut a broader flare. It cannot thus escape the charge that it has appropriated the Reece invention. There is nothing in the testimony to suggest that these changes gave any greater efficiency to the device. It seems plain to me that the defendant's roll is an infringement. Reece did not make a pioneer invention, but he is entitled to a rule of equivalents sufficiently liberal to protect him.

What the defendant here did is very much what the defendant did in Ives v. Hamilton, 92 U.S. 426, 430, 23 L.Ed. 494. There the patent was for a curved guide for a saw. The defendant substituted two straight guides, which he joined at an angle. The Supreme Court said that this was "too transparent an imitation to need a moment's consideration." The principle which the Supreme Court applied without comment in that case it has stated explicitly in others. Thus, in Winans v. Denmead, 15 How. 330, 342, 343, 14 L.Ed. 717, it said:

"Where form and substance are inseparable, it is enough to look at the form only. Where they are separable; where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention—for that which entitled the inventor to his patent, and which the patent was designed to secure; where that is found, there is an infringement; and it is not a defence, that it is embodied in a form not described, and in terms claimed by the patentee.

"Patentees sometimes add to their claims an express declaration, to the effect that the claim extends to the thing patented, however its form or proportions may be varied. But this is unnecessary. The law so interprets the claim without the addition of these words. The exclusive right to the thing patented is not secured, if the public are at liberty to make substantial copies of it, varying its form or proportions. And, therefore, the patentee, having described his invention, and shown its principles, and claimed it in that form which most perfectly embodies it, is, in contemplation of law, deemed to claim every form in which his invention may be copied, unless he manifests an intention to disclaim some of those forms."

In Union Paper Bag Machine Company v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935, the court said:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result.

"Nor is it safe to give much heed to the fact that the corresponding device in two

machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained.

"Inquiries of this kind are often attended with difficulty; but if special attention is given to such portions of a given device as really does the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome. * * *

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."

Perhaps the latest reiteration of this principle by the Supreme Court is in Sanitary Refrigerator Company v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147.

The Circuit Court of Appeals has expressed the same rule over and over again. Judge Hook, speaking for that court in the Eighth Circuit, in Sloan Filter Company v. Portland Gold Mining Company, 139 F. 23, 26, summarized it thus: "The mere use of known equivalents for some of the elements of prior structures; the substitution for one material of another known to possess the same qualities, though not to the same degree; the mere carrying forward or more extended application of the original idea, involving a change only in form, proportions, or degree, and resulting in the doing of the same work in the same way and by substantially the same means—is not patentable, even though better results are secured; and this is the case, although what preceded rests alone in public knowledge and use, and not upon patent."

The defendant urges that the grant of a patent for its machine raises a presumption of noninfringement. There are cases which support that presumption and others against it. The Circuit Court of Appeals for the Eighth Circuit in Freeman v. Altvater, 66 F.(2d) 506, certiorari denied 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 598, considered both views, citing many cases, and held that there is no such presumption. But, assuming the existence of the presumption, I think there is enough in the record to rebut it.

██ I find that the Reece patent, as to the claims in issue, is valid and infringed.

*The Second Patent*

In winding machines, either of the type that uses a reciprocating guide or the type using the Reece guiding roll, it is necessary to prevent ribbon winding, a condition which results from the piling up of thread in ridges or ribbons running around the package. This gives an uneven appearance to the package, and causes trouble when the thread is unwound for use. The second patent in suit is for a method of preventing this in machines using the Reece guide-roll. While not limited to use with that roll, its applicability to the Reece roll is expressly pointed out by reference to the Reece patent. The claims in issue follow:

"2. In a winding machine, the combination of means for rotatably supporting the package being wound, a traverse-roll for rotating the package by surface contact therewith, said roll embodying means for traversing the yarn from end to end of the package, means for rotating the traverse-roll, and means for varying the speed of the traverse-roll with a rapid intermittent acceleration and deceleration to cause slippage between the roll and the package whereby the latter continues to rotate at substantially constant speed and the ratio between the speed of the package and the traverse of the yarn is periodically altered to prevent ribbon winding.

"6. In a winding machine, in combination, means for rotatably supporting a yarn package, a grooved traverse roll arranged to rotate the package by contact with the periphery thereof while acting to traverse the yarn longitudinally thereof, means to rotate the traverse roll, and means producing intermittent slippage between the traverse roll and package periphery to change the ratio of package peripheral speed to axial yarn traverse to prevent ribbon winding.

"7. In a winding machine, in combination, means for rotatably supporting a yarn package, a grooved traverse roll arranged to rotate the package by contact with the periphery thereof while acting to traverse the yarn longitudinally thereof, means to rotate the traverse roll, and means producing recurrent fluctuation between the

peripheral speeds of the two rotating parts to produce changes in ratio between the speed of the package and the traverse of the yarn to prevent ribbon winding."

In their specification, the patentees thus describe their invention:

"One object of the invention is to provide a simplified mechanism incorporated in the winding machine and operating to disrupt the synchrony between the rotating package and the traverse-means which deposits the coils of winding in place thereon.

"Another object of the invention is to provide a mechanism of the type specified for periodically accelerating and decelerating the rate of movement of one or another of the cooperating winding elements, either the package-rotating means or the yarn-traversing means, at recurring cycles throughout the winding."

Ribbon winding is an old problem in the art. Its cause was well known, and also the remedy for it. Ribbon winding occurs whenever the speed of the thread-guide is the same as that of the package, or when one is an even multiple of the other. The remedy is to introduce into the driving mechanism means for varying the speed either of the guide or of the package. The patents of the prior art put in evidence by the defendant show various designs for doing this. It is sufficient to refer to two of them.

The specification of the patent to McKean, No. 716,923, issued December 30, 1902, states both the problem and his solution thus: "My invention relates to winding-machines, and especially to that class of winding-machines in which the cop is actuated by a drive-roll in contact with its surface and in which the thread-guide is reciprocated rapidly, so as to lay the thread obliquely upon the cop. In these machines each successive thread must be laid upon the cop at some distance from the last. Otherwise the threads would merely pile one on top of another and would not form a regular cop at all. This distance between successive threads on the cop is called the 'gainage' and depends upon the relative speeds of the thread-guide and the cop. In machines in which the cop is driven by frictional contact of a drive-roll with its surface its speed varies inversely as its diameter. As the winding progresses the diameter of the cop increases very slowly, and the change in its speed is correspondingly slow. At various points in the winding the relative speeds of the cop and

the thread-guide are such that the successive spirals are laid close side by side. This continues for a number of reciprocations of the thread-guide and forms a ridge of close-wound thread upon the cop. While this close wind is forming, the threads at the ends of the cop between the different parts of the ridge are left for some time without being bound in by other threads on top of them. At these exposed points the centrifugal force stretches the yarn, forming loops which fly out from the thread mass and break themselves upon the drive-roll. This is especially true when soft yarns are wound. In winding conical cops this tendency to form loops is very greatly increased, because the rotary force of the drive-roll is during a large part of the time applied to the cop obliquely and not at right angles to its axis. This tends to draw the threads toward one end and stretch them. One feature of my invention is to provide a machine which prevents the formation of these loops and the breakage of the threads resulting therefrom. To accomplish this, I provide automatic means to increase and decrease alternately the speed of the drive-roll, so that the variation in the relative speeds of the cop and thread-guide is rapid and the threads are at no time laid close side by side for more than two or three reciprocations of the thread-guide. Thus no ridge of close-wound thread can be formed, no threads are left unprotected long, and there is no opportunity for the formation of loops."

The sixth claim of this patent is for "automatic means to vary the relative speed of the thread-guide and the spindle while the machine is in operation, alternately increasing and diminishing the speed of one as compared with that of the other."

In a later patent to McKean, No. 952,-015, issued on March 15, 1910, he says: "The object of my invention is to improve the construction of machines of this class so as to wind cops of a predetermined size, and also to improve such machines with respect to the stop motion whereby the winding is stopped when a thread breaks, and with respect to the automatic control for the driving roll whereby the speed of the latter with relation to the speed of the thread guide is varied to control the laying of the thread or threads on to the cop."

These excerpts from prior patents show that there is no novelty in varying the speed of the thread-guiding mechanism in order to prevent ribbon winding. Nor is there

any novelty in the particular mechanism which the patentees devised for making this variation, and which they described in the patent in suit. The plaintiff does not assert that there is. Its expert explained that it is the same in principles as that of the differential of an automobile.

The novelty which the plaintiff does assert is that the patentees so varied the speed of the guide roll as to "cause slippage between the roll and the surface of the package whereby the latter continued to rotate at substantially constant speed while the rate of the traverse of the yarn is periodically altered." What this means is that the momentum of the package prevents it from responding promptly to alternate acceleration and diminution of the speed of the driving roll. If it did so respond, ribbon winding would be the result. As it does not, there is never, for any appreciable length of time, the even ratio between the two speeds which results in ribbon winding. There is nothing in this that involves invention.

The history of this patent in its course through the Patent Office is significant. In their application, the patentees claimed as their invention the specific mechanism for varying the speed of the guide-roll which they described. All their claims were rejected for want of novelty. Amended claims met a like fate. Entirely new claims were then drawn, and in these for the first' time the element of slippage between the guide-roll and the package appeared. It seems quite apparent the slippage was no part of the invention which they thought they had made. But, however this may be, there was no patentable invention in it. The discovery that a law of nature will produce a desired result, apart from any novelty in the means by which that law is brought into operation, is not patentable. Magin v. Karle, 150 U.S. 387, 392, 14 S.Ct. 153, 37 L.Ed. 1118; Knapp v. Morss, 150 U.S. 221, 228, 14 S.Ct. 81, 37 L.Ed. 1059. See, also, Risdon Iron & Locomotive Works v. Medart, 158 U.S. 68, 15 S.Ct. 745, 39 L.Ed. 899.

It should be added that the plaintiff also asserts that there is novelty in the patent because the mechanism for the variation of speed is applied to the rotary thread-guide, while in the prior art it was applied to the separate driving-roll by which the package was revolved. This contention requires comment only to make plain that it was not overlooked. The Reece roll is both thread-guide and driving-roll in one. To vary its speed is still to vary the speed of the driving-roll, whatever other functions it may perform.

I conclude that the Swanson and Marcroft patent, as to the claims in issue, is invalid for want of invention.

Let there be a decree for the plaintiff for an injunction and an accounting, according to the prayers of its bill, so far as the Reece patent is concerned, and denying relief in so far as the patent to Swanson and Marcroft is concerned.