## PACIFIC MARINE SUPPLY CO. et al. v. A. S. BOYLE CO.

### No. 8876.

Circuit Court of Appeals, Ninth Circuit.

April 13, 1939.

Rehearing Denied May 22, 1939.

Fred H. Miller, of Los Angeles, Cal., and G. E. Steiner, of Seattle, Wash., for appellants.

George P. Dike, Cedric W. Porter, and Dike, Calver & Gray, all of Boston, Mass., and G. Wright Arnold, of Seattle, Wash., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellee, the A. S. Boyle Company, an Ohio corporation, is the owner of patent No. 1,838,618 (hereafter called the Griffiths patent) and is engaged in the business of manufacturing and selling "plastic wood." Appellant Webb Products Company, Incorporated, a California corporation is engaged in the business of manufacturing and selling "duratite wood dough." Appellant Pacific Marine Supply Company, a Washington corporation, has a regular and established place of business in the Western District of Washington, where, among other things, it sells "duratite wood dough."

Alleging that such sales constitute an infringement of claims 5, 6, 8, 11, 13, 15, 16, 17 and 18 of the Griffiths patent, appellee brought suit against appellant Pacific Marine Supply Company in the District Court of the United States for the Western District of Washington. Appellant Webb Products Company, Incorporated, intervened and was, by order of the court, made a party defendant. Appellants defended on the grounds (1) that all the claims mentioned were invalid for lack of novelty, for lack of invention and for failure to particularly point out and distinctly claim the part, improvement or combination which Griffiths claimed as his invention or discovery, and (2) that, if valid, the claims were not infringed.

The District Court held that, if valid, claims 6, 11, 15 and 18 were not infringed; declined, therefore, to pass on their validity; held that claims 5, 8, 13, 16 and 17 were valid and infringed; and entered a decree enjoining further infringement and directing an accounting of profits and damages. Appellant seeks reversal. There is no cross-appeal. Hence, the only claims here involved are claims 5, 8, 13, 16 and 17.

The Griffiths patent was applied for on November 17, 1923, and was issued on December 29, 1931. The specification states that the claimed invention relates to plastic compositions; that it has for its object to provide a plastic mass which may be used for many purposes; that it may, for example, be used for filling, coating or moulding; that it may be used by pattern makers for filleting and similar work, by joiners and cabinet makers for filling screw and nail holes, shakes in timber and openings at joints and for preparing or repairing mouldings and carvings, or by shoemakers for building up or repairing lasts; that it hardens quickly when exposed to the air, adheres firmly to any clean dry foundation, does not blister or powder when exposed to moderate heat, and is not affected by water, gasoline or other commonly available liquids.

Claims 5, 8, 13, 16 and 17 read as follows:

"5. A doughy putty-like plastic composition comprising nitrocellulose in a solution containing a volatile liquid, and a finely divided cellulose filler in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood."

"8. A doughy putty-like plastic composition comprising nitrocellulose in a solution containing a volatile liquid, a non-drying oil and a finely divided wood filler in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood."

"13. A doughy putty-like plastic composition comprising nitrocellulose in a so-

lution volatile in part at least and containing acetone, castor oil, a resinous body, and a finely divided cellulose filler in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood."

"16. A doughy, putty-like plastic composition comprising nitro-cellulose in a solution containing a volatile liquid, a non-drying oil, and a resinous body, and a finely divided wood filler in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood."

"17. A composition of matter for hole filling and filleting, which before exposure to the air is dough-like and putty-like, and contains finely divided wood, nitrocellulose and a volatile liquid, and after exposure to the air has a wood-like rigidity and solidity and is essentially finely divided wood held together by the nitrocellulose."

Elements common to all these claims are (1) nitrocellulose, (2) a volatile solvent and (3) a filler, which in claims 5 and 13 is "a finely divided cellulose filler," in claims 8 and 16 "a finely divided wood filler," and in claim 17 "finely divided wood." A fourth element (oil) is mentioned in claims 8, 13 and 16; a fifth (a resinous body) in claims 13 and 16. Appellee's brief states:

"The essential ingredients of Griffiths' composition are nitrocellulose, a volatile solvent, a finely divided wood, i. e., wood-flour. The composition may also contain, and does preferably, a non-drying oil like castor oil, and a resinous body or gum, like ester gum. These toughen the product and render it more adhesive."

Thus, in effect, appellee states—and we accept the statement—that, in all the claims, the filler referred to is finely divided wood; that the oil mentioned in claims 8, 13 and 16 and the resinous body mentioned in claims 13 and 16 are not essential ingredients of Griffiths' composition; that its only essential ingredients are (1) nitrocellulose, (2) a volatile solvent and (3) finely divided wood.

Plastic compositions comprising these ingredients were known and used long prior to Griffiths' alleged invention. One such composition was described in patent No. 65,267 issued to William Hugh Pierson on May 28, 1867. Pierson's specification states:

"* * * I, William Hugh Pierson * * * have invented or discovered a certain new and useful art—viz., the art of manufacturing certain useful and ornamental articles out of plastic,[1] and of combinations and admixtures therewith of various other substances, as hereinafter more particularly described, and which art I call the plastic art, and the manufactures, plastic manufactures. * * *

"The nature of the invention consists in acting upon cotton, hemp, flax, grass, wood, starch, sugar or other equivalent vegetable matter by acids, &c., as herein shown, to soften, modify, and render soluble, or partly soluble, said vegetable matter in other solvents than said acids, and thereby render the said vegetable matter capable of being molded into forms applicable to the useful arts in several different ways, and for different purposes; and vegetable matter so changed is what I denominate 'plastic.'

*    *    *    *    *    *

"The plastic material used by me for the finest work is made by immersing cotton fiber in nitric acid, or a mixture of nitric and sulphuric acids, wetting the whole mass, and retaining the materials in contact for a greater or less time * * * then washing out the acids with water. When I wish a coarser article, I substitute flax, hemp, grass, or sawdust, &c., and treat them substantially in the same manner as the cotton fiber. The product[2] of this treatment is now ready to be submitted to the action of alcohol, ether,[3] &c., to fit it for combination with other substances, as well as for molding and other applications.

"I make my plastic manufactures as follows: For variety No. 1, take of plastic * * * one part, by weight, and wet it with two parts of alcohol and two parts of ether. This mixture is applied to cotton batting, or any equivalent fiber, or spread on any mold or surface of any desired form. When this solidifies it is completed. * * * The use of so small a quantity of the solvents will not completely dissolve the plastic, but puts it in a condition much more favorable than a solution for molding, and for combination with various

---

[1] Pierson's "plastic" is nitrocellulose.
[2] This "product" is nitrocellulose.

[3] Alcohol and ether are volatile solvents.

other substances previous to molding, and results, on the evaporation of the solvents, in a firm, strong, and durable fabric suitable for statuary, architectural and other moldings * * * and for imitations of * * * wood carvings, &c. * * *

"In practice, I propose to produce the fabrics above named by mixing the plastic and solvents with * * * vegetable powders, * * * as sawdust,[4] charcoal, and other carbonaceous substances, * * * from all of which combinations good and durable structures result.

*    *    *    *    *    *

"Variety No. 4 consists in the combination or admixture of plastic and its solvents with * * * woods, dye-stuffs, and carbonaceous substances generally. * * * The following are instances:

*    *    *    *    *    *

"In carbons, &c., take plastic, one part; alcohol, four; ether, four; charcoal powder, one to sixteen. Lamp-black or plumbago may be substituted for the charcoal, sawdust * * * may also be substituted for the charcoal, and oil[5] may often be added to advantage, useful for statuary and moldings * * * and for other purposes."

Thus, it is seen, the Pierson composition, patented in 1867, comprised the essential ingredients—nitrocellulose, a volatile solvent and finely divided wood—of the composition claimed to have been invented by Griffiths in 1923.

A plastic composition comprising the same ingredients was described in British patent No. 19,242 issued to Oblasser and Theryc on October 26, 1892. That patent was for improvements in the construction of boxes or receptacles for electric batteries and for other uses. The specification states:

"Our said invention comprises the application to the interior of the box of a special coating designed to render it absolutely tight.

*    *    *    *    *    *

"* * * We manufacture this coating by treating cellulose with nitric or sulphuric acid, and we may eventually add to the material[6] thus obtained camphor or any other suitable substance in the propor-

tion of from ten to forty per cent. according to requirements.

"This mixture, dried in the open air, in a stove or by compression, is then dissolved either by ethers or by acetic or pyroligneous acids or by acetone[7] or by any other suitable solvent. It is this solution which constitutes our coating.

*    *    *    *    *    *

"By mixing our coating with certain substances we may obtain a sort of agglomerate susceptible of being moulded. In this case the agglomerate is constituted by a paste composed of any suitable solid materials, such as * * * sawdust * * * or the like mixed with our above-mentioned liquid coating. Under these circumstances, instead of rendering a receptacle of wood or other material tight by the application of our coating we may manufacture it directly by moulding, use being made of the said agglomerate."

The "agglomerate" thus described by Oblasser and Theryc and the composition claimed to have been invented by Griffiths are, in all essentials, one and the same.

■ From the descriptions in their specifications, it is evident that Pierson's and Oblasser and Theryc's compositions were "doughy" and "putty-like," and that their ingredients were "in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood." The fact that they did not use the quoted words in describing their compositions, and that Griffiths did use them in describing his, is unimportant. Their descriptions and Griffiths' description differ in form, but not in substance. The thing described is, in each case, substantially the same.

■ As to what proportions of the named ingredients should be used, Pierson's and Oblasser and Theryc's specifications are as definite and specific as are the Griffiths claims here involved. Exact percentages are not given in either. Concerning Griffiths' failure to be more specific, appellee's brief states:

"A patent is addressed to the man skilled in the art. The man skilled in the art can tell from the Griffiths claims what pro-

---

[4] Sawdust is finely divided wood, or, as appellee calls it, "wood-flour."

[5] Compare claims 8, 13 and 16 of the Griffiths patent.

[6] This "material" is nitrocellulose.

[7] Ether, acetic acid, pyroligneous acid and acetone are volatile solvents.

292

portions of nitrocellulose, solvent and filler are needed to give the doughy, putty-like characteristics to the composition, and which will harden into the solidity of wood upon mere exposure to the air.

"It must be obvious also that the requirement for defining an invention does not require a statement of exact percentages. * * * Once an inventor of a new composition has shown in his disclosure how his new composition can be made, it will at once become clear to others familiar with the art that many different proportions can be used, with varying and useful results in the final product. * * *"

The statement applies with equal truth to the disclosures of Pierson, Oblasser and Theryc. A man skilled in the art could tell from their specifications, as readily as from the Griffiths claims here involved, what proportions of the named ingredients were needed to produce the desired result.

Other plastic compositions comprising Griffiths' "essential ingredients"—nitrocellulose, a volatile solvent and finely divided wood—were described in patent No. 999,490 issued to Carleton Ellis on August 1, 1911, and patent No. 1,203,229 issued to Frank W. Merrick on October 31, 1916. As a fourth ingredient, Ellis specified castor oil.[8]

British patent No. 27,534, issued to William Phillips Thompson on November 19, 1898, described a plastic composition comprising nitrocellulose, a volatile solvent and a "vegetable powder," which, of course, might be finely divided wood. Thompson also suggested the addition of "other suitable substances dissolved or otherwise such as resins, oils, gums, waxes, or the like."[9]

Were the question of novelty a doubtful one, significance might attach to the claimed commercial success of appellee's product, "plastic wood," manufactured, it is said, in accordance with the Griffiths patent. This, however, is not a doubtful case. The evidence establishes conclusively that Griffiths was anticipated by Pierson, Oblasser and Theryc, Ellis, Merrick and Thompson, and that, as to the claims here involved (5, 8, 13, 16 and 17), the patent in suit is invalid for lack of novelty. Other defenses need not be considered.

Decree reversed.

[8] Compare claim 13 of the Griffiths patent.

[9] Compare claims 8, 13 and 16 of the Griffiths patent.