## GRAYSON HEAT CONTROL, Ltd., v. LOS ANGELES GAS APPLIANCE CO., Inc.

No. 472.

District Court, S. D. California, Central Division.

Sept. 10, 1941.

Errol O. Shour, of North Hollywood, Cal., and Ira J. Wilson, of Chicago, Ill., for plaintiff.

J. Calvin Brown, of Los Angeles, Cal., and Manfred M. Weinberg, of Oakland, Cal., for defendant.

930

JENNEY, District Judge.

This case is now before the court upon objections by both plaintiff and defendant to the Special Master's Report. The action is by Grayson Heat Control, Ltd., owner of Letters Patent No. 1,699,468 and No. 1,957,774, issued to John H. Grayson on January 15, 1929, and May 8, 1934, respectively. Plaintiff charges infringement of both letters patent and unfair competition. Jurisdiction is invoked solely under the patent laws of the United States. Defendant denies both infringement and unfair competition and alleges that the patents in suit are invalid in law and anticipated by prior patents and publications.

The charges of infringement and unfair competition arise out of the sale of water heaters equipped with allegedly infringing thermostatic valves. The suit is openly defended by the Domestic Manufacturing Co., Inc., which admittedly is the manufacturer of the thermostatic valves in issue.

The master found claims 20 and 22 of No. 1,699,468 valid and infringed, and claim 10 of No. 1,957,774 valid, but not infringed. He also found defendant guilty of unfair competition. Each side has excepted to all adverse findings.

The general field involved is that of thermostatically controlled valves and, specifically, the use of such valves in connection with gas water heaters of the storage type which are today in common use. These water heaters consist of a storage tank, heated by a gas burner, which is controlled to maintain the water in the tank at temperatures within a predetermined range. Thermostatic valves used for this purpose are of two general types. The first and oldest is the throttling or graduating type, which starts and gradually increases the flow of gas as the water cools and, as the temperature rises, gradually decreases and finally cuts off the flow. The second is the snap action type, with which this case deals. These valves open at a fixed minimum temperature, permitting gas to flow at the optimum rate until a fixed maximum temperature is reached; at which point the valve operates to shut off the flow of gas. This latter type has certain advantages, in that the burner operates at highest efficiency at all times, bypassing is unnecessary, and back firing is eliminated.

The functioning of plaintiff's devices and the defendant's device, and the state of the prior art may be best understood by examining the following diagrams:

(Fig. 1)

Fig. 1 of Grayson No. 1,699,468

(Fig. 2)

Fig. 1 of Grayson No. 1,957,774

(Fig. 3)

Fig. 1 of Plaintiff's Exhibit 24, being the alleged infringing device

(Fig. 4)
Fig. 1 of Merrick No. 1,542,712, issued June
16, 1925, the closest reference

June 16, 1925.. W. A. MERRICK    1,542,712

THERMOSTAT CONTROL FOR WATER HEATERS

Filed March 10, 1924

*Fig. 1*

By reference to Figure 1 it is seen that
the operating parts, except for the ther-
mostatic unit, are enclosed in a body 9.
Gas enters the body through pipe 16 and
port 21 and flows out to the burner through
port 22 and pipe 17. The thermostatic unit
is composed of a rod of invar metal 5,
which has a low coefficient of expansion,
and a surrounding tube 6 of brass or cop-
per, which has a high coefficient of expan-
sion. The rod and tube are connected at
the plug 10, so that changes in temperature
cause relative movement between them.
The tube 6 is threaded into the body 9 so
that the rod 5 bears against a plunger 35.
On the inner face of the plunger 35 is an
annular ring or shoulder.

Attached to this rod 5 is another rod 24
which passes through the plunger 35 and
the body to a temperature regulating ar-
rangement at the right side of the body.
Slidably mounted upon this rod are the
valve 19, valve stem 23 and spring 26.
Valve 19 controls the flow of gas. The
spring 26 tends to hold the valve in closed
position against the valve seat 20.

The disk 30, known as a "clicker disk," is
made of spring bronze or other flexible
spring material. Pressure on the disk is
arranged to flatten the disk toward and
up to a dead center condition, whereupon
the slightest additional pressure causes
the disk to snap past the dead center condi-
tion, the neutral point, thus reversing the
form of the disk from convexo-concave to
concavo-convex. The disk rests loosely on
the shoulder 31 which is cut in the body 9.
The disk is so constructed that it will re-
turn of its own accord to the convexo-con-
cave form when the pressure which caused
it to snap over is relieved.

In operation, the cooling of water sur-
rounding tube 6 causes the tube to contract,
forcing rod 5 to move inwardly against the
plunger. The annular ring acts as a ful-
crum and forces the disk over dead center.
When the disk snaps over, the valve opens
and the gas flows to the burner under the
tank. As the temperature of the water is
raised, tube 6 expands and the reverse
movement takes place. The clicker disk
snaps back, due to inherent tension, and
the spring 26 forces the valve against its
seat. It can be seen that the movement
of the disk at the center is much greater
than at the point near the outer edge where
the force is applied. Thus the small move-
ment of the thermostatic rod (1 to 2/1000
of an inch) is multiplied and transmitted
to the valve. A temperature adjustment
is provided by the lever 12, which may be
moved to vary the effective length of the
rod 5.

The second Grayson patent (Figure 2
above) discloses a thermostatic valve of
the same general type as the first structure.
A small lever arrangement is placed be-
tween the plunger and the diaphragm.
Figure 4 of the patent and the specifica-
tions indicate that these levers may be
omitted. The valve is offset from the
clicker disk and a movement-amplifying-
lever 54 is inserted between the disk and
the valve. Although the patent states that
the invention is principally concerned with
a new and improved oven regulator for gas
ranges, there is no contention that it is
limited to oven regulators and could not
be infringed by a thermostat for water
heaters.

Defendant's device (Figure 3 above)
operates on the same general principles as
the Grayson thermostats. A hub or plunger
5 supports an annular snap ring 4. Ring
4 is a clicker disk, which is capable of
being snapped over center, returning
through its own resiliency. Bearing

against the disk is a lever element 20. Upon movement of rod 3 the lever element is forced to snap over center. The disk is free floating in the body. The outer edge of the disk is in contact only with the lever arms 20 and the lever 6.

The master found, and the court agrees, that the prior patent to Merrick, No. 1,-542,712, (Figure 4 above) is the closest reference. It should be noted that the lever arm in Merrick is located between the thermostatic element and the snap action element. The snap action element is a diaphragm which is comparatively large and cup-shaped with an outwardly flaring lip. The lip is engaged and tightly gripped between the upper and lower parts of the valve body. The diaphragm is capable of springing back when free to do so.

The master found novelty in the first Grayson patent in: (1) the use of a spring diaphragm of the self-reforming type, which is free to expand radially and is capable of being operated by force directly applied by the thermostatic unit, resulting in amplification of movement and snap action; (2) a combination capable of operating a valve member without the intervention of an amplifying lever between the thermostatic element and the spring element.

For convenience, the second basis of novelty will be considered first. A combination of this general type, without an amplifying lever between the thermostatic element and the spring element, appears to be novel. However, the complete elimination of the amplifying lever, except in so far as the disk itself provides leverage, seems to constitute Grayson's real contribution. The prior art, as cited, does not disclose a combination of the type involved in which all levers are omitted and amplification is obtained entirely from the disk. Elimination of the lever and bearings, which simplifies design and minimizes friction, results from the use of the disk, instead of a lever or series of levers, to obtain the entire amplification.

The court agrees that the use, in combination with a thermostatic element, of a spring diaphragm of the self-reforming type free to expand radially, amplifying motion, creating a snap action, and transmitting it to a valve is new in the art, and constitutes invention. Lengthy testimony was given concerning the great value of allowing the disk freedom for radial expansion. The chief merit of this arrangement lies in reducing, materially, the amount of force necessary to push the disk past dead center, thus permitting the use of a smaller disk. The reduction of the forces and the use of a small disk minimize friction and lost motion. According to the testimony the device is simple and compact, more sensitive to changes in temperature, and does not require the frequent adjustment usually required in more complicated thermostats. It was apparently this feature which led the master to a liberal application of the doctrine of equivalents.

Defendant, however, challenges the validity of claims 20 and 22 on the ground that the feature of radial expansion was not disclosed by the original application and that no supplementary oath was ever taken to support the amended claims.[1] Plaintiff maintains that this is a defense which must be pleaded, citing Walker's seventh defense, Deller's Edition, Vol. 3, p. 1889. (On the same point he might have cited Sections 666, 723 and 887E (6) of the same work.) The "Seventh Defense" as stated by Walker does not mention a supplementary oath. Some of the cases cited in those sections do deal with amendments unsupported by a supplementary oath, but none indicates that the question must be raised by a special plea calling attention to the lack of an oath. In the opinion of the court this defense is admissible under Paragraph IV of the answer, which denies that the patents were duly and regularly issued. A patent issued without the oath required by R.S. § 4892, 35 U.S.C.A. § 35, is not duly and regularly issued. When an amendment presents

---

[1] Defendant originally did not argue before the master the question of lack of supplemental oath. The first suggestion to that effect came in proposed amendments to the master's report. As will be seen, infra, the defense is meritorious, and the court believes it should be considered although it was not argued before the master. Under Rule 53 (e) (2) of the Federal Rules of Civil Procedure, 28 U. S.C.A. following section 723c, the case might be recommitted to the master for a consideration by him of this point. However, the file wrapper is before the court presenting a question which would ultimately have to be decided by the court upon the record before the patent office. It would therefore merely delay disposition of the case to recommit it to the master.

something not theretofore disclosed and the amendment is not accompanied by a supplementary oath, R.S. § 4892 is not complied with. It therefore seems unnecessary to discuss the effect upon defensive pleading in patent suits of the new Federal Rules of Civil Procedure, particularly Rule 8(b).

The requirement of a supplementary oath is fully considered in Westinghouse E. & Mfg. Co. v. Metropolitan E. Mfg. Co., 2 Cir., 1923, 290 F. 661, where it is held that new matter introduced by amendment must be supported by supplemental oath to satisfy R.S. § 4892. The opinion states that it is the specifications which disclose the invention, and the statute is satisfied if they are supported by oath even though the vital claims are later introduced without amendment. The court there considers the prior Supreme Court cases of Seymour v. Osborne, 1871, 11 Wall. 516, 78 U.S. 516, 20 L.Ed. 33, and Steward v. American Lava Co., 215 U.S. 161, 30 S.Ct. 46, 54 L.Ed. 139. The Seymour case contains a statement that, in the absence of fraud, recitals in letters patent are conclusive evidence of the taking of the necessary oath. However, the rule enunciated in the Steward case is that a patent cannot be sustained where the theory and method are introduced for the first time in an unverified amendment specification. The Westinghouse case holds that the broad words of the Seymour case cannot be used to nullify the rule of the Steward case. For a recent case invalidating a patent for lack of supplemental oath, see Schick Dry Shaver v. R. H. Macy & Co., 2 Cir., 1940, 111 F.2d 1018.

The Ninth Circuit Court of Appeals, speaking through Judge Stephens, in Wire Tie Mach. Co. v. Pacific Box Corporation, 1939, 102 F.2d 543, upheld the patent because the amendment, although not sworn to, did not introduce any new matter. The Court, quoting at length from the Westinghouse case, seems to recognize the principle that if new matter is introduced by amendment, without supplemental oath, the patent is invalid.

Rights arising from invention must be obtained by strict compliance with every requirement imposed by the Congress. M. Swift & Sons v. W. H. Coe Mfg. Co., D.C.R.I.1938, 22 F.Supp. 527, affirmed, 1 Cir., 1939, 102 F.2d 391. The defense is not in any sense technical. "It goes to the very heart of a patentee's right, and the defense of 'new matter' is available for the benefit, not only of a particular defendant, but also of the public. The monopoly which the patentee gains must be clearly obtained; else he may unjustly retard commerce or place unnecessary burdens upon it." Simpson v. Newport News Shipbuilding & Dry Dock Co., D.C.S.D. N.Y.1920, 18 F.2d 318, 322, affirmed, 2 Cir., 1927, 18 F.2d 325.

A careful examination of the language used in the original application for the patent here before us, and in the amendments thereto, is necessary in order to determine whether the element of freedom for radial expansion was first disclosed by amendment unsupported by oath.

The original application provided in part: "The disk is arranged to rest on an annular shoulder 31 defining the end of the smooth cylindrical bore 32 provided in the neck 8 of the valve body 9. The shoulder 31 is slightly bevelled, as indicated, so that the disk rests thereon only at the very edge thereof." (Number "31" was originally erroneously written "21".)

By amendment without supplemental oath the word "loosely" was inserted between "rest" and "on" in the first line so that the patent reads "rest loosely on". The following language also appeared in the original application: "The last point will be clear when it is considered that in the old type devices the diaphragm was clamped tightly around the edge between two castings and secured by screws, whereas in my construction the diaphragm is comparatively loose, thus permitting greater movement with a disk of small diameter, due to the fact that the extreme edge being free, may snap over from normal condition to distorted (later revised to read 'reversed') condition, and vice versa. In other words, if a diaphragm as small in diameter as the present one were clamped at the edge, it could have no snap action."

By amendment unsupported by oath the period concluding the foregoing was omitted and the following added: " * * * because radial expansion of the disk under pressure would not be permitted in such a construction. In the present construction it takes much less pressure to operate the disk because of its freedom for radial expansion, and there is also the advantage that there is little danger of the disk becoming permanently distorted."

Thus it appears that the element of freedom for radial expansion was not set forth

934

in any of the claims in the original application, nor were any amendments, inserting the claims covering radial expansion, supported by oath. What Grayson was claiming in the original application was a disk which was not clamped at the edges. A disk not clamped at the edges, although confined in a cylinder, might require somewhat less force to snap it over than a disk of equal size which is clamped at the edges. The relative merits of two such combinations with regard to the amount of force required to produce snap action has not been presented. There is no provision in the original specifications, or even in the amended specifications, for a clearance between the disk and the cylindrical bore so as to permit radial expansion. Quite the contrary. The original application contained the matter quoted above providing that the disk rests on the annular shoulder 31 at the very edge thereof. If there is any question which edge of the shoulder is referred to, it is proper to examine the drawings to ascertain what is meant. Walker, Deller's Edition, Section 262. The drawings show clearly that the edge meant is the one formed by the intersection of the annular shoulder 31 with the cylindrical bore 32.

In Schriber Co. v. Cleveland Trust Co., 1938, 305 U.S. 47, 59 S.Ct. 8, 83 L.Ed. 34, the Supreme Court held that it was error to read into a patent an element introduced for the first time by amendment. There the amendment was bad, not for lack of supplemental oath, but because adverse rights had intervened. The court quoted from R.S. § 4888, 35 U.S.C.A. § 33, which provides that the application must contain "a written description of [his invention] * * * and of the manner and process of making, constructing; * * * and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art * * * to * * * construct * * * and use the same; *and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; * * *.*" (Italics added by this court.)

In his original application Grayson contrasted his device with old type devices, in which the diaphragm is clamped at the edge between castings and screws, and described his diaphragm as being "comparatively loose" with the extreme edge, free to snap over. In any event, if there be any doubt as to his meaning, that doubt is dispelled by reference to the drawings.

We must therefore hold that claims 20 and 22 of the first Grayson patent are invalid, because they depend upon the element of freedom for radial expansion for the disk in order to justify the finding of invention, and that element is not supported by oath.[2]

The validity of claim 10 of No. 1,957,774 (the second Grayson patent) is also in issue. It reads as follows:

"In a thermostatic device of the character described, the combination with a thermostatic element arranged to move upon temperature change, of a valve or other device arranged to be operated according to temperature change, a snap-action over center element of spring material, a plunger arranged to be moved by the thermostatic element and arranged to move the snap-action element over dead center, the snap-action element and valve being disposed in laterally spaced relation to one another, a movement amplifying lever pivotally supported at one end and arranged to have movement communicated thereto intermediate its ends by the snap-action element, said lever having its free end arranged to communicate movement to the valve, and a screw adjustment in the operating connection between the free end of the lever and the valve, the same being arranged to be adjusted so that movement is communicated to the valve at the instant of the snap action of the snap-action element."

The master found that the combination is not present in the prior art, and is presumptively an invention. He held that claim 10 of the patent is entitled to a narrow scope—which he did not define—and is not infringed.

The patentee had requested and was allowed a claim, not here in suit, which did not specify where the lever was pivoted.

[2] In the case of Grayson Heat Control, Inc. v. E. R. Parker, R-117-M, in this district, (no opinion) claims 1 to 4 and 12 to 24 of the Grayson patent No. 1,699,468 were held valid and infringed. The case was tried by a special master whose report was confirmed by the court upon stipulation of counsel. It does not appear from the report of the master that the question of lack of supplemental oath to the element of radial expansion was raised.

The patentee, in argument before the examiner, stated that claim 4 differed from claim 5 in avoiding reference to pivoting the lever at the end. (See discussion concerning reference to file wrapper and arguments in Lensch v. Metallizing Company of America, D.C., 39 F.Supp. 838.) The master held that because the lever in claim 10 is pivoted at the end, claim 10 must be limited to that form of lever. Referring to claim 4 and the file wrapper, generally, the master felt that the patentee clearly understood the limitation; and, since defendant's lever is pivoted intermediate its ends, there was held to be no infringement.

No authorities have been found which require the court to refuse the plaintiff a reasonable doctrine of equivalents with respect to the lever. If ignoring the limitation of pivoting the lever at the end would make claim 10 identical with some other claim in the patent, the court might be justified in refusing to apply the doctrine of equivalents. To do so would be consistent with the principle that each claim is in theory a separate patent, and that no two claims should be so construed as to make them identical. However, in the second Grayson patent neither claim 4, nor any other claim, would be of the same scope as claim 10 if the location of the lever pivot were omitted from claim 10.

The conclusion of the court is that the specification of the form of the lever in claim 10 does not prevent the application of the doctrine of equivalents to that element. It therefore becomes necessary to determine the validity and scope of claim 10, and, if valid, whether or not defendant infringes.

When we consider the various thermostatic devices for controlling water heaters which exist in the prior art, it must be concluded that there is nothing patentable in claim 10. When Grayson reinserted the lever, which had been eliminated in his first patent, he merely added to his first device an element old in the art. In addition to the reinserted lever, claim 10 includes in the combination a screw adjustment between the free end of the lever and the valve. It was the addition of the screw 58 which secured the allowance of claim 10, numbered 11 in the application. This is admitted in plaintiff's brief. Claim number 10 in the application was identical with claim 11 in the application except that claim 10 did not contain the element

of the screw adjustment. The examiner rejected claim 10 in the application upon Kercher, No. 1,515,684 (defendant's exhibit Z-5 in this suit), but allowed claim 11, which, with a later amendment not required by the examiner and not material here, matured into the claim in issue.

■ This court reaches the conclusion that, even with the addition of the screw adjustment, there is nothing patentable in this claim over the prior art, particularly Grayson No. 1,699,468, Merrick No. 1,542,-712, and Beler Reissue No. 17,544 (defendant's exhibit Z-9 in this suit). Plaintiff claims that the screw adjustment performs an important function in insuring that the valve will be opened or closed simultaneously with the snap over of the disk, and providing a leak-proof seating of the valve when closed. However, the use of a screw to permit the adjustment of a valve is common in mechanics. Of this the court may take notice. Brown v. Piper, 1875, 91 U.S. 37, 23 L.Ed. 200; Werk v. Parker, 1919, 249 U.S. 130, 39 S.Ct. 197, 63 L.Ed. 514. We would be reluctant to base a finding of invention upon the addition of this element even if it were introduced for the first time in thermostats of this general type by the patent in issue. However, the Beler Reissue discloses a like screw adjustment. (See, also, Fig. 4, Merrick, supra.)

■ Although no prior patent cited discloses the exact combination covered by claim 10, nevertheless the prior art shows that all elements of this combination were old. It required little ingenuity and no invention to combine them as did Grayson in the structure to which this claim is drawn. Oswell v. Bloomfield, 7 Cir., 1940, 113 F.2d 377. Claim 10 lacks invention over the prior art.

Plaintiff has indicated, in open court, that it will not pursue the charge of unfair competition in the event the patent claims are finally held invalid. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195.

Except as hereinabove indicated, all objections to the master's report are overruled.

Counsel for defendant will prepare within fifteen days findings of fact and conclusions of law and interlocutory decree under local rule 8 in accordance with this opinion; objections thereto, if any, may be filed within ten days thereafter.