GRAYSON HEAT CONTROL, Limited, v.
LOS ANGELES GAS APPLIANCE
CO., Inc.

No. 10045.

Circuit Court of Appeals, Ninth Circuit.

March 13, 1943.

Errol O. Shour, of North Hollywood, Cal., and Ira J. Wilson, of Chicago, Ill., for appellant.

J. Calvin Brown, of Los Angeles, Cal. (M. M. Warren, of Oakland, Cal., of counsel), for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

This was an action by appellant against appellee for infringement of claims 20 and 22 of patent No. 1,699,468 and claim 10 of patent No. 1,957,774. Defenses pleaded by appellee were that the claims were invalid for lack of novelty and for lack of invention, and that, if valid, they were not infringed. The court below held the claims invalid and dismissed the action. D.C., 40 F.Supp. 928. Appellant seeks reversal.

Patent No. 1,699,468.

Patent No. 1,699,468 was applied for by John H. Grayson (appellant's assignor) on January 3, 1928, and was issued on January 15, 1929. The specification states: "This invention relates to thermostats [1] generally, but has particular reference to those

---

[1] As used in the specification, the term "thermostat" includes a main body, a member to be thermostatically operated, a thermostatic element to operate said member and means for transmitting motion from said element to said member. In the thermostat described in the speci-

fication, the main body is a valve body, the member to be thermostatically operated is a valve, the thermostatic element comprises a rod and a tube, and the motion-transmitting means comprise a disk and a plunger.

especially adapted to the requirements of water heaters, oven regulators and allied devices, and, still more particularly, gas operated devices of that type." A thermostat embodying the claimed invention is described in the specification and illustrated in Figs. 1-3 of the patent drawing, here produced.

Jan. 15, 1929.                      1,699,468

J. H. GRAYSON
THERMOSTAT
Filed Jan. 5, 1928

*Fig. 1.*

*Fig. 2.*

*Fig. 3.*    *Fig. 4.*

*Inventor*
*John H. Grayson*
*By*
*Wilson + McConnan*
*Attys.*

The thermostat thus described and illustrated is one designed to control the flow of gas to the burner of a water heater. It comprises:

1. A valve body 9 having a neck 8 threaded into a bushing 14 in the side or bottom of the tank of a water heater, a portion of the wall of which appears at 15. A plug 7 is threaded into the neck 8, but occupies only a part thereof. The part not so occupied is a smooth cylindrical bore 32 having a slightly beveled annular shoulder 31. Also threaded into the body 9 is a plug 29 having a central bore 28 into which is fitted a plug 27. The body 9 is connected between pipes 16 and 17, the former extending from the gas main, the latter to the burner of the water heater. A bypass connection for the pilot light is provided at 18. Gas flows into and out of the body 9 through ports 21 and 22.

2. A valve 19 cooperating with a valve seat 20 to control the flow of gas from the pipe 16 to the pipe 17. The valve 19 has a hollow stem 23 slidably mounted on a rod 24, which passes through a central bore in the plug 27 and extends through the body 9 to 25. The valve 19 is normally held seated (closed) by a spring 26, but opens when pressure sufficient to move it is applied to the stem 23. In Fig. 1 of the drawing the valve 19 is closed. In Fig. 2 it is open.

3. A thermostatic element comprising a rod 5 made of material (preferably invar) having a low coefficient of expansion and a tube 6 made of material (preferably brass or copper) having a high coefficient of expansion. The tube 6 is open at one end, closed at the other. Its open end is threaded into a central bore in the plug 7. All except the threaded portion of the tube 6 is inside the tank of the water heater. One end of the rod 5 is adjustably threaded into a plug 10 which is soldered into the closed end of the tube 6. In the other end of the rod 5 is a recess into which the rod 24 is pinned at 25, so that, in effect, the rod 24 is an extension of the rod 5. Adjustment of the rod 5 is made by turning a handle 12 which is clamped by a collar 38 to the rod 24 and has a pointer 37 passing over a dial 13 on the plug 29. The rod 5 moves to the left when the tube 6 expands, to the right when it contracts.

4. Means for transmitting motion from the thermostatic element to the valve 19. Said means comprise a disk 30 and a plunger 35. The rod 24 passes through a central hole 33 in the disk 30 and through a central hole 34 in the plunger 35. The disk 30 is made of flexible spring material (preferably spring bronze) and hence is called a spring-action disk. It is convex on one side, concave on the other. It is normally convex on the side nearest the plunger 35 and concave on the side nearest the valve stem 23, but is arranged to snap over to the opposite form when pressure is applied to its normally convex side (see Fig. 3) and to snap back to its normal form when such pressure is relieved. At its outer edge the disk 30 rests loosely on the shoulder 31 at the end of the bore 32. The plunger 35 is slidably received in the bore 32. The end of the rod 5 engages the back of the plunger 35. The face of the plunger 35 has a projecting annular shoulder 36 whereby the plunger 35 has "line contact" with the disk 30, such con-

tact being in a circle of a radius slightly less than that of the disk 30. When the tube 6 contracts, the rod 5 presses against the plunger 35, the plunger 35 presses against the disk 30, and the disk 30 snaps over, presses against the valve stem 23 and opens the valve 19. When the tube 6 expands, the pressure is relieved, the disk 30 snaps back, and the valve 19 is closed by the spring 26.

Claims 20 and 22 are for combinations each of which is described as follows: "In a device of the character described,[2] in combination with a main body,[3] a member adapted to be thermostatically operated,[4] a thermostat [5] adapted to operate said member, and means for transmitting motion from said thermostat to said member, said means comprising a normally convexo-concave spring-action disk mounted in said body * * * and a plunger * * *."

Claim 20 describes the disk as being mounted "so that the marginal edge thereof is loosely supported and radial expansion of said disk is permitted, said disk having a normally concave side towards said member and operatively related thereto and being adapted when pressed on its convex side to snap over into reverse curvature." Claim 22 describes it as being mounted "with a normally concave side towards said member and operatively related thereto, said disk being of small diameter but mounted so as to be free to expand radially when pressure is applied thereto, whereby it is adapted when pressed on its convex side to snap over into a reverse curvature and to automatically return to its normal position when pressure is released."

Claim 20 describes the plunger as "bearing on one side on the convex side of said disk near the edge thereof and on the other side in operative relation with the thermostat." Claim 22 describes it as "bearing on one side on the convex side of said disk near the margin thereof and on the other

side in direct operative relation with said thermostat."

The combination described in claim 20 and the combination described in claim 22 differ but slightly. For present purposes, the two may be, and they are hereinafter, treated as one. This combination is not merely a combination *in* a thermostat. It *is* a thermostat—a thermostat comprising a valve body, a valve, a thermostatic (rod-and-tube) element and means for transmitting motion from that element to the valve, said means comprising a disk and a plunger constructed and mounted as described.

Thermostats were in common use long prior to Grayson's claimed invention. Prior art thermostats were described in 22 patents copies of which are in evidence in this case. Of the 22, we shall consider two —patent No. 1,542,712, applied for by William A. Merrick on March 10, 1924, and issued on June 16, 1925, and patent No. 1,681,911, applied for by John A. Spencer on October 25, 1924, and issued on August 21, 1928.

Merrick's thermostat comprised a valve body, a valve, a thermostatic (rod-and-tube) element and means for transmitting motion from that element to the valve, said means comprising a disk, a plunger and a lever. Spencer's thermostat comprised a valve body, a valve and a disk which was both a thermostatic element and a motion-transmitting means.[6] All elements of Grayson's thermostat were found in Merrick's thermostat. Grayson's thermostat differs from Merrick's however, in two respects, namely:

First: In Merrick's thermostat, the motion-transmitting means included a lever. This was a third-class (movement-amplifying) lever placed between the plunger and the thermostatic element. Its function was to amplify the movement of the plunger; in other words, to make the plunger move a greater distance than the thermostatic element. Grayson's motion-transmitting

---

[2] Meaning, obviously, a device of the character described in the specification.

[3] In a device of the character described, the main body is a valve body.

[4] In a device of the character described, the member adapted to be thermostatically operated is a valve.

[5] As used in claims 20 and 22, the term "thermostat" includes only the thermostatic (rod-and-tube) element. See footnote 1.

[6] Spencer described his disk as "a composite by-metallic sheet made up of two

materials, such as iron and brass having different coefficients of expansion so that a change in temperature will cause unequal expansion and contraction of opposite faces of the sheet." The disk was "normally cupped (as by swaging)" so that the part having the higher coefficient of expansion was on the concave side. Consequently the disk, when heated, would snap over to the opposite form and, when cooled, would snap back to its normal form.

means do not include a lever or any equivalent thereof or substitute therefor. His plunger has no greater movement than his thermostatic element.

The omission of a lever was claimed by Grayson and held by the court below to be a novel feature of Grayson's thermostat. In this, Grayson and the court were wrong. Spencer's thermostat contained no lever. Moreover, in omitting Merrick's lever, Grayson also omitted its function. Such omissions do not constitute invention. Richards v. Chase Elevator Co., 159 U.S. 477, 486, 16 S.Ct. 53, 40 L.Ed. 225; Utah Radio Products Co. v. General Motors Corp., 2 Cir., 106 F.2d 5, 8. See, also, McClain v. Ortmayer, 141 U.S. 419, 426, 429, 12 S.Ct. 76, 35 L.Ed. 800; Magin v. Karle, 150 U.S. 387, 392, 14 S.Ct. 153, 37 L.Ed. 1118.

Second: Merrick's disk was clamped at its outer edge. Grayson's disk is not, but is mounted "so that the marginal edge thereof is loosely supported and radial expansion of said disk is permitted."[7] There is no novelty in this. Spencer's disk was, as his specification stated, "loosely mounted in an annular recess" in the valve body of his thermostat. Spencer's "annular recess" was the equivalent of Grayson's cylindrical bore 32. Spencer's disk was as "free to expand radially"[8] as Grayson's disk. Grayson, taught by Spencer, substituted a loosely mounted disk for the clamped disk of Merrick. This required nothing beyond the skill of the art and obviously did not constitute invention. Mantle Lamp Co. v. Aluminum Products Co., 301 U.S. 544, 547, 57 S.Ct. 837, 81 L. Ed. 1277; Textile Machine Works v. Louis Hirsch Textile Machines, 302 U.S. 490, 497, 498, 58 S.Ct. 291, 82 L.Ed. 382; Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 356, 59 S.Ct. 897, 83 L.Ed. 1334; Kugelman v. Sketchley, 9 Cir., 133 F.2d 425.

Lack of novelty and lack of invention being clearly shown, no significance attaches to the fact, if it be a fact, that utility resulted and commercial success followed from what Grayson did. Toledo Pressed Steel Co. v. Standard Parts, supra; Pacific Marine Supply Co. v. A. S. Boyle Co., 9 Cir., 103 F.2d 288, 292; Bramlett v. National Unit Corp., 9 Cir., 104 F.2d 17, 19; Kugelman v. Sketchley, supra.

Claims 20 and 22 were not in the original application for patent No. 1,699,-468, but were added by amendment on September 14, 1928. Grayson verified the original application by making oath as required by § 4892 of the Revised Statutes, 35 U.S.C.A. § 35, but did not verify the amendment. Lack of such verification was not pleaded as a defense, but was shown by evidence received without objection. The court below held that, for lack of such verification, claims 20 and 22 were invalid. Whether that was a sufficient ground for holding the claims invalid we need not and do not decide; for, whether invalid on that ground or not, they must be and are by us held invalid for lack of novelty and for lack of invention.

### Patent No. 1,957,774.

Patent No. 1,957,774 was applied for by Grayson on December 29, 1930, and was issued on May 8, 1934. The specification states that the claimed invention "relates to automatic temperature regulating devices," and that its principal object "is to provide a snap-action thermostat or heat regulator for gas heated ovens and the like." A thermostat embodying the claimed invention is described in the specification and in claim 10 of the patent. It comprises a valve body, a valve, a thermostatic (rod-and-tube) element and means for transmitting motion from that element to the valve, said means comprising a disk, a plunger and a lever.

This, Grayson's second thermostat, differs from his first (described in patent No. 1,699,468) in that the second includes a lever, which the first omitted. Grayson's lever differs from Merrick's (described in patent No. 1,542,712) in that Grayson's lever is between the disk and the valve stem, instead of being, as Merrick's lever was, between the plunger and the thermostatic element, and is connected with the valve stem by means of a screw, which Merrick's lever did not have. Concerning these differences, the court below said (40 F.Supp. 935):

"When Grayson reinserted the lever, which had been eliminated in his first patent, he merely added to his first device an element old in the art. * * * Plaintiff [appellant] claims that the screw adjustment performs an important function in insuring that the valve will be opened or closed simultaneously with the snap over

---

[7] See claim 20, supra.

[8] See claim 22, supra.

of the disk, and providing a leak-proof seating of the valve when closed. However, the use of a screw to permit the adjustment of a valve is common in mechanics. * * * Although no prior patent cited discloses the exact combination covered by claim 10, nevertheless the prior art shows that all elements of this combination were old. It required little ingenuity and no invention to combine them as did Grayson in the structure to which this claim is drawn."

■ With this we agree; and we conclude, as did the court below, that claim 10 is invalid for lack of novelty and for lack of invention.

Judgment affirmed.