## McCULLOUGH v. KAMMERER COR-
### PORATION et al.

### No. 9957.

Circuit Court of Appeals, Ninth Circuit.

Oct. 18, 1943.

MATHEWS, Circuit Judge, dissenting in part.

———◆———

R. Welton Whann and Robt. M. Mc-Manigal, both of Los Angeles, Cal., and A. W. Boyken, of San Francisco, Cal., for appellant.

Frederick S. Lyon and Leonard S. Lyon, both of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This cause is here upon appeals from two judgments of the district court holding a patent numbered 1,625,391, hereinafter called the Reilly-Stone patent, owned by appellee Kammerer Corporation of which appellee Baash-Ross Tool Company is sole licensee, valid and infringed by three of appellant's products. A permanent injunction was granted and a reference ordered for the determination of damages. The devices in question are tools used in the oil industry for cutting and removing frozen or stuck drill pipes from wells. There were two suits below against appellant, the second for a device added to the devices claimed in the first suit as infringing the patent. Upon stipulation the two suits were ordered consolidated for trial and for all other purposes. However, they were treated as if separate cases having common evidence. The opinion of District Judge Yankwich with accompanying reproductions of a tool described in the patent is reported in 39 F.Supp. 213. We affirm the judgments of the District Court, considering here only the appellant's claim of error.

The Reilly-Stone patent specifies and claims an improvement over the device of a prior patent, No. 1,277,600, hereinafter designated as the Kammerer patent. It is not questioned that the Reilly-Stone claims of which numbers 1, 2 and 21[1] relied on by appellees are warranted by the specifications. The contentions of appellant are that the device shown by the specifications has no patentable novelty, and if the patent is valid, there is no infringement.

The combination patented by Kammerer is a cylindrical tool surrounding a pipe to be cut. It has two parts, (a) an inner

---

[1] The three Reilly-Stone claims relied upon by appellees at the trial as infringed and as typical of the remaining claims are:

1. A tool of the class described comprising relatively movable members, pivoted cutter blades, oscillatable from collapsed position into cutting position by relative movement between the members, yieldable arms on one of the members engageable with a shoulder on the pipe that is to be cut, and means connected with the other members to move said member.

2. A tool of the class described comprising a tubular body, means to rotate and raise the tubular body, a cutter blade movable mounted in the tubular body and adapted to lie retracted approximately

longitudinally of the body, and means including a spring operable by upward movement of the tubular body to move the cutter blades from retracted position to cutting position, the expansion of the spring thereafter operating as the sole power to feed the cutter blade inwardly.

21. A tool of the class described comprising relatively movable members, a cutter blade movably mounted in one of said members and adapted to lie retracted approximately longitudinally thereof and to be engaged by the other member, and means including a spring operable by relative movement between said members to move the cutter blade from retracted position to cutting position, the spring thereafter operating to feed the cutter blade inwardly.

cylinder constructed to revolve about the pipe, but held against upward movement by the bracing of arms extending upward against the under side of a joint coupling in the pipe, the inner cylinder having firmly attached wedges pointing downward, the inner side of the wedges angling from their lower ends upward and inward towards the pipe, and (b) an outer cylinder constructed to revolve with the inner cylinder, but movable upward when revolving and carrying up with it cutters rectilinear in form on their non-cutting sides and contained in similar apertures in the outer cylinder and movable inwards at right angles. The upward movement of the outer cylinder draws its cutters' outer ends against the angled faces of the downward pointing wedges of the vertically immovable inner cylinder, thus pressing them into the pipe.

The upper ends of the outer cylinder of the Kammerer tool are firmly attached to a cylindrical casing which extends upward into the rig above the pipe to be cut, where it is rotated and gradually lifted, thus rotating and lifting the outer cylinder of the tool and with it the cutters. The result is a spiral, upward cut, gradually deepening into the pipe until it is entirely severed.

The cutting may take place several thousand feet below the surface of the ground. Hence obvious difficulties of mechanical adjustment were presented (1) in the upward pull of the long connecting casing and the cutters in the outer cylinder of the tool against the relatively short length of the downward fixed wedge, with (2) the concentric cylinders, the one dragged upwards against the other while both revolving together, and (3) the likelihood of torque in the long connecting member with the friction of the upward motion of the outer cylinder against the structure of the inner cylinder and of the cutter against the wedge. The field was open for invention of a "new and useful inprovement" in the pipe cutting art.

The Reilly-Stone device has a similar inner and outer cylinder the inner fixed against movement upwards by extending arms. Its wedging device is a continuous ring angled towards the pipe. However the downward pointing wedge ring of the Reilly-Stone cutter instead of being immobile in the cutting operation is moved downward against the outer edge of the cutters standing vertically on pivots attached below to the outer cylinder, wedging the cutting edge against and into the pipe without any substantially vertical movement in the cutters. This arrangement results in a substantially horizontal, circular cut instead of a spirally upward cut, as the outer cylinder revolves the cutters around the pipe on a fixed horizontal plane.

The downward movement of the Reilly-Stone wedge ring is from the pressure of a spring braced against the lower edge of a pipe collar through the upward extending arms of the inner cylinder. The spring, a part of the inner cylinder of the tool, is relaxed until the cutting point is reached and the engaging arms are braced against the pipe collar. It is then compressed by the upward movement of the outer cylinder of the tool. Then by the shearing of a restraining pin the stored power in the spring is released and applied to the wedge, causing its downward movement which is translated by the wedges into horizontal pressure on the cutters forcing them against the pipe.

The outer cylinder's upward movement is solely to compress the spring and then to trip it free to release its energy on the wedge. The only movement of the outer cylinder in the cutting operation is circular on a single horizontal plane.

There was a great gain in having the downward wedging power in the spring at the place of cutting and in the cutters making a circular cut, as distinguished from attempting to move the cutters upward against the fixed wedge by lifting the weight of the outer cylinder plus the heavy weight of its long connecting casing extending to the rig above, creating the attendant friction of upward movement of the outer cylinder against the inner cylinder, all resulting in a spiral cutting operation. The manufacture of the Kammerer tool was at once discontinued for that of the Reilly-Stone. The latter had wide use and great economic success.

The appellants contend that the combination of the two cylinders of the tool, the one functioning against the other to produce a transverse wedging motion on the revolving cutter was old in the art since the expiration of the Kammerer patent; and that applying the power to the wedge by a spring is a mere mechanical equivalent of the application of the force on the wedge through the continuing upward lifting of the tool and connecting casing by the power at the head-rig.

With this contention we cannot agree. Because the result in both cases is that the pipe is cut by a wedging process is not determinative of equivalency of either the wedging devices or their functions. The precompression of the spring before the wedging process and its automatic release of its power when the shearing device permits its application to the moving wedge is a device differing in the function of creating the power and storing it, from the function of continued lifting of the tool manually controlled above ground.

Also different in function is the cutting itself. Kammerer's cutters as gradually lifted, necessarily move into and through the pipe in a narrowing ascending spiral. Reilly-Stone cutters move directly into the pipe on a horizontal plane that is "inwardly".[2]

Here we have a different mechanical means of holding and applying power to perform a different power function and a different cutter mechanism to perform a different cutting function with a great operational gain in eliminating the double motion of the outer cylinder at once horizontally circular and at right angles upward. It is the combination of these two mechanisms and functions with the tool's combined concentric cylinders, one fixed to the pipe and the other moving co-operatively outside it, which are obvious reasons for the abandonment of the manufacture of Kammerer tools and the substitution of that of Reilly-Stone and the latter's success. Its new mechanisms and functions are not mere mechanical equivalents of the Kammerer device.

■ In the prior art, cutters standing vertically on a pivot had been wedged into pipes to sever them. In other branches of mechanics springs had been used to press wedges to move other members. But neither had been combined before with such a combination of the concentric cylinders, one moving upward and then functioning in co-operation with the fixed inner cylinder in such a complex cutter device. We agree with the District Court that the Reilly-Stone new combination is an invention and that its patent is valid with respect to the claims 1, 2, and 21.

Each of appellant's several tools charged with infringing has similar moving outer and fixed inner concentric cylinders. It has the same pivoted vertical cutter blades pressed inward by a wedge moving against the edge of the cutters opposite to its pivot. Here is identity of function and device with the Reilly-Stone mechanism. The wedge is moved by the power of a precompressed spring released by a tripping device. Here again identity of the continuous application of the spring's stored power at the place where the cylinders are held for cutting with that of Reilly-Stone.

In our opinion each of these devices infringe the Reilly-Stone patent. McCullough contends that because the spring in his tool is precompressed outside the tool before it is lowered, it is a different device though performing the same function of continued delivery of its stored energy when released by the tripping device. To us the essence of the Reilly-Stone tool is the delivery at the place of cutting of the stored energy of a spring precompressed prior to the cutting operation and that precompressing it a longer time before by other means is mere mechanical equivalence.

McCullough's precompressed spring has a function not found in the Reilly-Stone precompressed spring. The Reilly-Stone spring holds its compression against the pipe collar through the extending arms. The place of cutting is thus limited to the distance below the collar of the length of the arms and of the tool down to the cutters. The McCullough spring operates with a restraining means inside the tool, which may be lowered and held at any place between two pipe collars after the spring has been released by a tripping device brought in contact with the upper of the two collars by extending arms which perform only the tripping function. This advantage in the spring's complete action within the tool has nothing to do with the function of cutting. Whether it is a patentable improvement of the Reilly-Stone tool, because it permits cutting at a more advantageous place on the pipe, is not a question pertinent here.

The judgment is affirmed.

MATHEWS, Circuit Judge (dissenting in part).

---

[2] Reilly-Stone's claim 21 states the movement as "the spring thereafter operating to feed the cutter blade inwardly", not spirally upward and inward as in the Kammerer cutter.

Appellees, Kammerer Corporation and Baash-Ross Tool Company, brought two suits against Otis J. McCullough, Ray Andrade and appellant, Ira J. McCullough, for infringement of claims 1-9, 12, 14-18 and 21 of patent No. 1,625,391,[1] of which Kammerer Corporation was the owner and Baash-Ross Tool Company was, in the United States, sole licensee. Defenses were that the claims were invalid, and that, if valid, they were not infringed. The suits were consolidated and tried by the court. The court held the claims valid and infringed by appellant. It accordingly entered judgments which dismissed the suits as to Otis J. McCullough and Ray Andrade, enjoined appellant[2] from infringing the claims and ordered an accounting of profits and damages. Appellant seeks reversal.

Patent No. 1,625,391 was applied for by John B. Reilly and Charles H. Stone (assignors of Kammerer Corporation) on July 19, 1923, and was issued to them on April 19, 1927. It describes and claims as Reilly and Stone's invention a tool for cutting and removing pipe from wells. Such tools were in common use long before Reilly and Stone's claimed invention. Some were described in the following patents: Luther, No. 111,221, January 24, 1871; Kellogg, No. 657,777, September 11, 1900; Kammerer, No. 1,277,600, September 3, 1918; Hill, No. 1,338,773, May 4, 1920.[3]

Each of the four tools last above mentioned (Luther's, Kellogg's, Kammerer's and Hill's) comprised, inter alia, cutter blades and means for actuating such blades —making them engage and cut the pipe. Luther's and Kellogg's cutter blades were pivoted. Kammerer's and Hill's were not pivoted, but were slidable. Kellogg's and Hill's actuating means included a coil spring. Luther's and Kammerer's did not. To restrain the action of the spring until it was desired to cut the pipe, Kellogg and Hill provided a shear pin.[4] No shear pin was needed or provided by Luther or Kammerer.

Reilly and Stone's tool is a copy of Kammerer's, except that Reilly and Stone (1) substitute pivoted blades for slidable blades, thus following Luther and Kellogg instead of Kammerer and Hill, and (2) include a spring and shear pin, thus following Kellogg and Hill instead of Luther and Kammerer. If, as their specification states, Reilly and Stone's tool is an improvement over Kammerer's, such improvement required nothing beyond the skill of the art and obviously did not constitute invention. Mantle Lamp Co. v. Aluminum Products Co., 301 U.S. 544, 547, 57 S.Ct. 837, 81 L.Ed. 1277; Textile Machine Works v. Louis Hirsch Textile Machines, 302 U.S. 490, 497, 58 S.Ct. 291, 82 L.Ed. 382; Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 356, 59 S.Ct. 897, 83 L.Ed. 1334; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 89, 62 S.Ct. 37, 86 L.Ed. 58; Kugelman v. Sketchley, 9 Cir., 133 F.2d 426, 427; Grayson Heat Control v. Los Angeles Gas Appliance Co., 9 Cir., 134 F.2d 478, 481. Therefore the claims in suit are invalid.

Lack of invention being clearly shown, no significance attaches to the fact, if it be a fact, that commercial success followed the claimed improvement. Toledo Pressed Steel Co. v. Standard Parts, supra; Pacific Marine Supply Co. v. A. S. Boyle Co., 9 Cir., 103 F.2d 288, 292; Bramlett v. Na-

---

[1] The complaints charged infringement of three patents, No. 1,277,600, No. 1,625,391 and No. 1,625,414. At the trial, however, patent No. 1,277,600, patent No. 1,625,414 and claims 10, 11, 13, 19 and 20 of patent No. 1,625,391 were withdrawn from suit. There remained in suit claims 1-9, 12, 14-18 and 21 of patent No. 1,625,391.

[2] The court filed an opinion expressing the view that appellees were "entitled to a permanent injunction against the defendants" (Otis J. McCullough, Ray Andrade and appellant). Kammerer Corporation v. McCullough, D.C., 39 F.Supp. 213, 214. However, instead of enjoining Otis J. McCullough and Ray Andrade, the judgments entered by the court dismissed the suits as to them.

[3] Others were described in the following patents: Lawrence, No. 105,156, July 5, 1870 (reissue No. 5.092, October 8, 1872); Lawrence, No. 126,403, May 7, 1872; Palm, No. 543,265, July 23, 1895; Eastwood, No. 682,180, September 10, 1901; Cushing, No. 935,467, September 28, 1909; Nelson, No. 1,138,395, May 4, 1915; Driscoll, No. 1,258,015, January 8, 1918; Carmichael, No. 1,324,303, December 9, 1919; Beatty, No. 1,328,940, January 27, 1920; Lonsdale, No. 1,403,-612, January 17, 1922; Hinderliter, No. 1,433,722, October 31, 1922; Jones, No. 1,454,819, May 8, 1923; Plante, No. 1,-458,118, June 5, 1923.

[4] Kellogg called his shear pin a fastening-wire. Hill called his a shearing pin.

tional Unit Corp., 9 Cir., 104 F.2d 17, 19; Kugelman v. Sketchley, supra; Grayson Heat Control v. Los Angeles Gas Appliance Co., supra.

The judgments should be affirmed as to Otis J. McCullough and Ray Andrade and reversed as to appellant.